IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DARRELL WILLIAMS                   :

     Plaintiff,                          :

vs.                                 :      CIVIL ACTION 08-00433-KD-N

BENJAMIN TAYLOR, et al.,            :

     Defendants.                     :

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed

a complaint under 42 U.S.C. § 1983.  This action has been referred to the undersigned

pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4) and is before the Court

for an initial screening pursuant to 28 U.S.C. § 1915.

II.  Background.

On July 24, 2008, Plaintiff filed a § 1983 complaint and a motion for leave to

proceed *in forma pauperis* in this Court.  (Docs. 1, 2).  On July 31, 2008, the Court

ordered Plaintiff to re-file his complaint and motion to proceed *in forma pauperis* on this

Court's forms.  (Doc. 4).  Plaintiff filed an Amended Complaint on August 27, 2008.

(Doc. 5).  On March 22, 2010, Plaintiff filed a motion to amend that complaint (Doc. 17),

which the Court granted on April 2, 2010.  (Doc. 18).

In his new Amended Complaint (Doc. 19), Plaintiff names as defendants Officer

Benjamin Taylor of the Fairhope Police Department; Officer John Morgan of the

Fairhope Police Department; Sergeant Cliff Gilheart of the Fairhope Police Department;

Mike Cummerlander, Chief of Police of the City of Fairhope; Tim Kant, Mayor of the City of Fairhope; Gloria Banks, a nurse at Thomas Hospital; Philip Kousa, Director of Thomas Hospital; and John Doe, a doctor at Thomas Hospital. (<u>Id.</u> at 6-10).

Plaintiff alleges in his Amended Complaint that, on the night of August 12, 2007, Officer Taylor stopped him on Hwy. 181 in Fairhope, Alabama, for reckless driving. (<u>Id.</u> at 4). Plaintiff pulled his car over in a parking lot where Officer Morgan was waiting in his patrol car. (<u>Id.</u>). Officer Taylor approached Plaintiff's vehicle at the driver's side door and asked him several questions. (<u>Id.</u>). Officer Taylor accused Plaintiff of being in possession of drugs and "immediately snatched plaintiff from his vehicle taking him to the ground head first." (<u>Id.</u>). "Defendant Taylor repeatedly slammed plaintiff's head against the asphalt numerous times until he realized there wasn't any drug evidence." (<u>Id.</u> at 5). "Plaintiff was lifted up from the asphalt and directed to the rear of his vehicle in front of defendant Taylor's patrol car, where defendant Taylor ordered plaintiff to place his hands on the rear of his vehicle." (<u>Id.</u>). As this occurred, Officer Morgan stood by and watched. (<u>Id.</u>).

Defendant Taylor told Plaintiff that the patrol car cameras were not on and made "unprofessional remarks concerning his dissatisfaction with plaintiff," accusing Plaintiff of swallowing the "drug evidence." (<u>Id.</u>). Officer Taylor told Plaintiff that he would take him to the hospital to "have his stomach pumped." (<u>Id.</u>). Sergeant Gilheart arrived on the scene and instructed Officers Taylor and Morgan to take Plaintiff to the hospital to "end this problem tonight." (<u>Id.</u>). Sergeant Gilheart stated that Plaintiff "looked sick to him

too." (Id.).

Defendants Taylor and Morgan transported Plaintiff to the emergency room at Thomas Hospital where, according to Plaintiff, he was asked numerous questions by a staff member and then directed to an examination room. (Id.). Defendants Taylor, Morgan, Gilheart, and a nurse, Gloria Banks, were in the examination room. (Id.). Defendant Taylor told Plaintiff, "we can do this the easy way or the hard way, but you will give blood and urine samples!" (Id.). Nurse Banks then hooked Plaintiff up to an EKG machine. (Id.). Plaintiff insisted that he was not giving his consent to any medical treatment or test, and Nurse Banks "explained that she could extract urine without plaintiff's cooperation." (Id.). After Officer Taylor's and Nurse Bank's threats, Plaintiff explained that he was not giving his consent but that he would not physically resist their demands, and blood and urine samples were extracted by Nurse Banks at the request of Officer Taylor, while Officers Morgan and Gilheart watched. (Id.).

Thereafter, Defendant John Doe, a doctor, entered the examination room and attempted to have Plaintiff admit to swallowing drugs. (Id.). "[H]owever, plaintiff averred that he had not swallowed drugs, and that he was fine other than the bruises obtained incident to the officer's conduct." (Id.). Defendant John Doe reviewed the EKG results and concluded that Plaintiff was "fine." (Id.). Defendant Taylor then transported Plaintiff to the city jail and charged Plaintiff with reckless driving, DUI, and resisting arrest. (Id. at 6).

In his Amended Complaint, Plaintiff asserts the following claims against these

Defendants arising out of the events of August 12, 2007: (1) Officer Taylor - conspiracy, unlawful arrest, excessive use of force, assault, and illegal search and seizure, in violation of Plaintiff's Fourth and Fourteenth Amendment rights; (2) Officer Morgan - conspiracy to allow Officer Taylor to conduct an unlawful arrest, use excessive force, commit assault and battery, and conduct an illegal search and seizure, in violation of Plaintiff's Fourth and Fourteenth Amendment rights; (3) Officer Gilheart - conspiracy with Defendants Taylor, Morgan, Banks, and John Doe to allow an unlawful arrest and an illegal search and seizure of blood and urine samples, in violation of Plaintiff's Fourth and Fourteenth Amendment rights; (4) Chief of Police Cummerlander - failure to train Defendant police officers and to act on prior complaints regarding those officers' unlawful or unprofessional performance, in violation of Plaintiff's Eighth and Fourteenth Amendment rights; (5) Mayor Kant - failure to train Defendant police officers and to act on prior complaints regarding those officers' unlawful or unprofessional performance, in violation of Plaintiff's Eighth and Fourteenth Amendment rights; (6) Nurse Banks - conspiracy with Officer Taylor to conduct an illegal search and seizure of Plaintiff's blood and urine, in violation of Plaintiff's Fourth and Fourteenth Amendment rights; (7) Director Kousa - failure to train and oversee Defendant staff members' unlawful or unprofessional performance, depriving Plaintiff of his right to refuse medical treatment, in violation of Plaintiff's Eighth and Fourteenth Amendment rights; (8) John Doe, a doctor at Thomas Hospital - conspiracy with Defendant Taylor to conduct an illegal search and seizure of Plaintiff's blood and urine, in violation of Plaintiff's Fourth and Fourteenth Amendment

4

rights.  (Id. at 6-10).

II.  Standards of Review Under 28 U.S.C. § 1915(e)(2)(B).

Because Plaintiff is proceeding *in forma pauperis*, the Court has reviewed

Plaintiff's Amended Complaint under 28 U.S.C. § 1915(e)(2)(B).[1]  Under §

1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis

either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325 (1989).  A claim is

frivolous as a matter of law where, *inter alia*, the defendants are immune from suit, id. at

327, the claim seeks to enforce a right which clearly does not exist, id., or there is an

affirmative defense which would defeat the claim, such as the statute of limitations, res

judicata, collateral estoppel, or absolute immunity.  Clark v. Georgia Pardons & Paroles

Bd., 915 F.2d 636, 640 n.2 (11th Cir. 1990).  Judges are accorded "not only the authority

to dismiss [as frivolous] a claim based on an indisputably meritless legal theory, but also

the unusual power to pierce the veil of the complaint's factual allegations and dismiss

those claims whose factual contentions are clearly baseless."  Neitzke, 490 U.S. at 327.

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for

failure to state a claim upon which relief may be granted.  See Mitchell v. Farcass, 112

F.3d 1483, 1490 (11th Cir. 1997) (noting that the language of § 1915(e)(2)(B)(ii) tracks

---

[1] The predecessor to this section is 28 U.S.C. § 1915(d).  Although Congress made many substantive changes to § 1915(d) when it enacted 28 U.S.C. § 1915(b)(2)(B), the frivolity and the failure to state a claim analysis contained in Neitzke v. Williams, 490 U.S. 319 (1989), was unaltered.  Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001).  However, dismissal under § 1915(e)(2)(B) is now mandatory.  Bilal, 251 F.3d at 1348.

the language of <u>Federal Rule of Civil Procedure</u> 12(b)(6)).  To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007) ("plaintiffs [must] nudge[] their claims across the line from conceivable to plausible....").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'"  <u>Twombly</u>, 550 U.S. at 555, 557, 127 S. Ct. at 1965, 1966 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Iqbal</u>, __ U.S. at __, 129 S. Ct. at 1949.

In determining whether a complaint states a claim upon which relief can be granted, the Court takes the plaintiff's allegations as true.  <u>Jones v. Bock</u>, 549 U.S. 199, 215 (2007).  A *pro se* litigant's allegations are given a liberal construction by the Court. See <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972) (the allegations of a *pro se* plaintiff are held to "less stringent standards than formal pleadings drafted by lawyers."); <u>GJR Investments, Inc. v. County of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998) ("Courts do and should show a leniency to *pro se* litigants....").  "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party . . . or to rewrite an otherwise deficient pleading in order to sustain an action....

GJR Investments, 132 F.3d at 1369.  A *pro se* litigant "is subject to the relevant law and rules of court, including the Federal Rules of Civil Procedure."  Moon v. Newsome, 863 F.2d 835, 837 (11th Cir. 1989).

Therefore, with respect to screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, a *pro se* litigant's allegations must meet the Twombly standard of plausibility.  See Hall v. Secretary for Dep't of Corrs., 2008 WL 5377741, *1 (11th Cir. 2008) (unpublished)[2] (applying Twombly standard to *pro se* prisoner complaint screened pursuant to § 1915(e)(2)(B)(ii)); and Cobb v. Florida, 293 Fed. Appx. 708, 709 (11th Cir. 2008) (unpublished) (liberally construing *pro se* prisoner's pleadings and applying Twombly standard in screening pursuant to § 1915A(b)(1)).

III.  Analysis.

In his Amended Complaint, Plaintiff alleges that Defendants deprived him of his Fourth, Eighth and Fourteenth Amendment rights arising out his arrest and subsequent treatment at Thomas Hospital on the evening of August 12, 2007.  (Doc. 19).  The Court has analyzed Plaintiff's claims to determine whether Plaintiff has pled "factual content that allows the court to draw the reasonable inference that [each] defendant is liable for the misconduct alleged," Ashcroft, __ U.S. __, 129 S. Ct. at 1949, and makes the following recommendations.

---

[2] "Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority."  Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC, 253 Fed. Appx. 861, 865 n.5 (11th Cir. 2007) (unpublished).

A. <u>Defendant Phillip Kousa</u>.

In his Amended Complaint, Plaintiff sues the Director of Thomas Hospital, Phillip Kousa, for "fail[ure] to properly train or oversee defendant staff members' unlawful or unprofessional performance as averred . . . depriving plaintiff of his right to refuse medical treatment and unlawful search and seizures. . . ." (Doc. 19 at 9-10). In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) that the defendant deprived him "of a right secured under the Constitution or federal law and (2) that the deprivation occurred under color of state law." <u>Willis v. University Health Servs., Inc.</u>, 993 F.2d 837, 840 (11th Cir. 1993).

> Previously, this circuit set forth the three primary tests the Supreme Court has used to determine whether state action exists: (1) the public function test; (2) the state compulsion test; and (3) the nexus/joint action test. <u>National Broadcasting Co., Inc. v. Communications Workers of America, AFL-CIO</u>, 860 F.2d 1022, 1026 (11th Cir. 1988). The public function test limits state action to instances where private actors are performing functions "traditionally the exclusive prerogative of the state." <u>NBC</u>, 860 F.2d at 1026 (citations omitted). The state compulsion test limits state action to instances where the government "has coerced or at least significantly encouraged the action alleged to violate the Constitution." <u>NBC</u>, 860 F.2d at 1026 (citations omitted). The nexus/joint action test applies where "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." <u>NBC</u>, 860 F.2d at 1026-27 (citations omitted). We must determine on a case-by-case basis whether sufficient state action is present from a non-state actor (defendant) to sustain a section 1983 claim.

<u>Willis</u>, 993 F.2d at 840 (plaintiff failed to show that defendant, a private hospital, was a

state actor for purposes of § 1983 liability).

In his Amended Complaint, Plaintiff does not allege that Defendant Kousa is a state actor, that Defendant Kousa was performing a traditional state function, that Defendant Kousa was coerced into unconstitutional action by the State, or that Defendant Kousa was engaged in a joint enterprise with the State. Plaintiff alleges only that Defendant Kousa is the Director of Thomas Hospital and that he is suing Kousa under § 1983 for failure to properly train his hospital staff.[3]

Because Plaintiff does not allege a deprivation by Defendant Kousa that occurred under color of state law, the Court concludes that Plaintiff's § 1983 claim against this defendant "lacks an arguable basis in law" and is, therefore, frivolous under § 1915(e)(2)(B)(i). See Neitzke, 490 U.S. at 325. Moreover, because § 1983 relief could not be granted under any set of facts that could be proved consistent with Plaintiff's allegations against Defendant Kousa, the Court further concludes that Plaintiff's Amended Complaint against Defendant Kousa fails to state a claim upon which relief can be granted and is, therefore, due to be dismissed under § 1915(e)(2)(B)(ii).

B. Defendant Gloria Banks.

In his Amended Complaint, Plaintiff alleges that Gloria Banks, a nurse at Thomas Hospital, conspired with Officer Taylor to conduct an illegal search and seizure of his

---

[3] Plaintiff does not allege any direct involvement by Defendant Kousa in the events of August 12, 2007.

blood and urine.  (Doc. 19 at 8).  Plaintiff states that Nurse Banks acted "in concert with Defendant Taylor . . . as a nurse, in the emergency room on August 12, 2007, performed illegal tests under pretense of plaintiff's health, where plaintiff specifically invoked his rights to refuse medical treatment; thereafter, defendant Banks conducted an illegal search and seizure of the plaintiff's blood and urine. . . ." (Id.).  "Defendant Banks threatened plaintiff with a medical procedure to extract his urine sample if he did not cooperate on August 12, 2007, thereafter causing plaintiff to yield to their demands for both blood and urine without physical resistance."  (Id.).

As discussed above, in order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) that the defendant deprived him "of a right secured under the Constitution or federal law and (2) that the deprivation occurred under color of state law." Willis, 993 F.2d at 840.  To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff "must show that the parties 'reached an understanding' to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy."  Bailey v. Board of County Comm'rs of Alachua County, Fla., 956 F.2d 1112, 1122 (11th Cir. 1992) (quoting Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990)).  "The plaintiff attempting to prove such a conspiracy must show that the parties 'reached an understanding' to deny the plaintiff his or her rights.  Bendiburg, 909 F.2d at 468 (quoting Addickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970)).  The plaintiff does not have to produce a "smoking gun."  Id.  However, Plaintiff must allege some evidence of an agreement

between the defendants.  See Bailey, 956 F.2d at 1122 ("The linchpin for conspiracy is agreement, which presupposes communication.").

At this stage the court is merely screening plaintiff's complaint pursuant to 18 U.S.C. §1915 for frivolity.  Plaintiff's Amended Complaint contains sufficient factual allegations to satisfy the Iqbal requirements for his claim against Nurse Banks.[4] Specifically, Plaintiff alleges that he was taken to the emergency room at Thomas Hospital by Officer Taylor who believed that Plaintiff had just swallowed drugs to avoid being caught with "drug evidence."  (Doc. 19 at 5).  Officer Taylor demanded blood and urine testing of plaintiff, and Nurse Banks informed plaintiff that, if he did not agree, they could take the samples without his agreement.  Generally, patients have a right to refuse medical treatment.  *E.g.* Washington v. Glucksberg, 521 U.S. 702, 722 n. 17 (1997)[5]. This otherwise unexplained concerted action between Banks and Officer Taylor is adequate to nudge plaintiff's claim that Nurse Banks was acting in a conspiracy with Officer Taylor "across the line from conceivable to plausible."  Twombly, 550 U.S. at 557.

C. Defendant John Doe.

_____

[4]  Plaintiff does not have to satisfy a heightened pleading requirement in his § 1983 conspiracy claim against Nurse Banks, *see* Swann v. Southern Health Partners, Inc., 388 F.3d 834, 836-38 (11th Cir. 2004).

[5]  Except for the involvement of law enforcement, the court will not presume that Nurse Banks had a purely medical reason to inform plaintiff that he could be treated and tested without his consent.

Plaintiff also sues John Doe, a doctor at Thomas Hospital, for conspiring with Officer Taylor to conduct an illegal search and seizure of Plaintiff's blood and urine and conspiring with Officer Taylor to coerce Plaintiff into admitting that he had swallowed drugs. (Doc. 19 at 8). Specifically, Plaintiff states that John Doe acted "in concert with defendant Taylor . . . as a doctor, in the emergency room on August 12, 2007, ordered the nurse to performed (sic) illegal tests under pretense of plaintiff's health, where plaintiff specifically invoked his rights to refuse medical treatment; thereafter, defendant John Doe attempted to coerce plaintiff into saying he had swallowed drugs. . . ." (Id.).

"As a general matter, fictitious-party pleading is not permitted in federal court." Richardson v. Johnson, 2010 WL 693629, *2 (11th Cir. 2010). The Eleventh Circuit has created "a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" Id. (quoting Dean v. Barber, 951 F.2d 1210, 1215-16 (11th Cir. 1992) (the "John Doe" defendant designation is sufficient when other identifying information indicates that only one person occupies a specific position)).

In this case, Plaintiff has identified John Doe as "a doctor at Thomas Hospital" who, according to Plaintiff, was working in the emergency room on August 12, 2007. (Doc. 19 at 8). Even if the court presumes that there were multiple doctors working in the emergency room on that shift, this particular doctor was involved in plaintiff's evaluation and/or treatment. That description is likely to be sufficient to identify the one doctor

against whom Plaintiff is asserting this claim. *See* <u>Dean</u>, at 1216 (*citing* <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 642 (9th Cir. 1980)(Allowing use of unnamed defendant where it was clear that discovery would uncover defendant's identity)).

In addition to the foregoing, Plaintiff's conspiracy claim against Defendant, John Doe, is not subject to dismissal as frivolous for lack of specificity in pleading conspiracy. Plaintiff asserts that Doctor Doe ordered Nurse Banks to perform medical tests on Plaintiff after Plaintiff refused to consent to testing, and the doctor attempted to have Plaintiff admit that he had swallowed drugs. For the reasons set forth in connection with the claim against Nurse Banks, the undersigned finds that the allegations are sufficient to preclude dismissal of this claim as frivolous.

<u>CONCLUSION</u>

Based on the foregoing, it is recommended that Plaintiff's claims against Defendant Kousa be dismissed without prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i), as frivolous, and pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim upon which relief may be granted. The claims against Defendants Banks, Doe, Taylor, Morgan, Gilheart, Cummerlander, and Kant, as alleged in Plaintiff's Amended Complaint (Doc. 19), will proceed.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate

Judge.

DONE this 23rd day of April, 2010.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

# MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND <u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[6] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

<u>/s/ Katherine P. Nelson</u>

**UNITED STATES MAGISTRATE JUDGE**

---

[6] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).